```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LINDA DEJANA, as Personal
Representative of the Estate of
Philip Dejana, Deceased, and
WILLIAM T. GRAFF, as Personal
Representative of the Estate of              MEMORANDUM AND ORDER
Kevin Graff, Deceased,                       10-CV-4029(JS)(WDW)

                Plaintiffs,

        -against-

MARINE TECHNOLOGY, INC., and
RANDY M. SCISM,

                Defendants.
----------------------------------X
```
APPEARANCES:
For Plaintiffs:     Daniel O. Rose, Esq.
                    Justin Timothy Green, Esq.
                    Kreindler & Kreindler LLP
                    100 Park Avenue, 18th Floor
                    New York, NY 10017

                    Michael Allweiss, Esq.
                    Allweiss & Allweiss
                    5363 Central Avenue
                    Saint Petersburg, FL 33710

                    Robert S. Moran, Jr., Esq.
                    McBreen & Kopko LLP
                    110 Summit Avenue
                    Montvale, NJ 07645

For Defendants:     Daniel Gerard McDermott, Esq.
                    Keith D. Heinold, Esq.
                    Marshall, Dennehey, Warner, Coleman & Goggin
                    Wall Street Plaza
                    88 Pine Street, 21st Floor
                    New York, NY 10005

SEYBERT, District Judge:

This suit arises out of a fatal 2008 boating accident in the Great South Bay near Patchogue, Long Island. Plaintiffs Linda Dejana and William T. Graff (collectively, "Plaintiffs") are the personal representatives of decedents Philip Dejana ("Dejana") and Kevin Graff ("Graff"), respectively. Plaintiffs sued Defendants Marine Technology, Inc. ("Marine") and Marine's CEO and sole shareholder, Randy M. Scism ("Scism" and, with Marine, "Defendants") for products liability. Pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction. (Docket Entry 17.) For the reasons that follow, the Court concludes that it does not have personal jurisdiction over Defendants and, in the interest of justice, transfers this action to the United States District Court for the Eastern District of Missouri.

BACKGROUND

In 2008, Dejana and Graff were racing a speedboat called the "Aero Express" in the "Battle of the Bay" offshore powerboat race on the Great South Bay. (Am. Compl. ¶ 56.) The "Aero Express" capsized as it approached the course's second turn, and its canopy collapsed upon impact with the water. The cockpit flooded, and both operators were killed. (Id. ¶¶ 64-67.) On behalf of Dejana and Graff, Plaintiffs sued Marine, the Aero Express' manufacturer, and Scism, Marine's president,

2

asserting causes of action for design defect, manufacturing defect, and failure to warn. The thrust of Plaintiff's case is that the Aero Express' canopy did not meet industry requirements. (See id. ¶¶ 39, 66.)

Defendants argue that they are not subject to this Court's jurisdiction. Marine is a Missouri corporation with its principal place of business in Wentzville, Missouri. (Randy Scism Affidavit ("Scism Aff.") ¶ 3.) Scism is a Missouri domiciliary. (Id. ¶ 1.) Marine designs and builds custom-ordered powerboats and sells them either directly to consumers or through a Tennessee boat dealer. (Id. ¶ 9.) It sells approximately ten boats per year, mostly in Missouri and Tennessee. (Id. ¶ 6.) Since 1989, Marine has sold three boats to New York residents (id. ¶ 9), but these boats were purchased and delivered in either Missouri or Tennessee. (Id. ¶¶ 9, 10.)

Marine attracts customers through a website and through its attendance at various boat shows, none of which are held in New York. (Id. ¶¶ 12, 14-14.) Its website boasts that Marine's boats have an exceptional performance record in powerboat races worldwide. (See Pl. Ex. 5, Summ. Defs.' Website ¶¶ 4-5, 8.) Although customers cannot complete a sale through the computer, the website provides information regarding models, prices, and further contact information. (Id. ¶ 5.) The prices

3

quoted on Marine's website range from $199,000 to $899,000 per boat. (Id. ¶ 6.b, f.)

Dejana bought the Aero Express from Slug Hefner, a Missouri resident and longtime customer, in 2007, (see Am. Compl. ¶ 25), and the parties dispute whether Marine or Scism helped orchestrate the sale. There is no question that Marine sold Hefner the boat in 2004,[1] but the parties disagree whether Marine was "instrumental" in facilitating the sale from Hefner to Dejana (Plaintiffs' view) or whether Marine learned of the deal only after it had been completed (Defendants' view). (See Hefner Aff. ¶ 14 (stating that Dejana told him that Marine had been "instrumental" in the sale).) According to Plaintiffs, Scism "personally spoke to [Dejana] on more than one occasion touting [the Aero Express'] design, construction history, speed, handling and performance capabilities." (Pl. Opp. 5.) Plaintiffs claim that Scism's encouragement was the primary factor in Dejana's final purchase decision. (Id.) Additionally, they maintain that Scism tried to sell Dejana a new Marine boat at the time of his purchase from Hefner. (Id.) Defendants deny any involvement in the re-sale. (Scism Aff. 20.)

---

[1] When Hefner owned it, the Aero Express was called the "Dirty Duck." (Randy Scism Supplemental Affidavit ¶ 3.) For clarity's sake, the Court refers to the "Aero Express" throughout.

4

Plaintiffs also assert that Defendants have had extensive contact with New York since Dejana bought the Aero Express from Hefner. They claim that Supercat Rigging, which is partially owned by Scism, performed $22,000 of service on the boat and billed Dejana in New York. (Pl. Opp. 18.) They also claim that Defendants are highly active in powerboat racing circles, and that Dejana and Graff raced the Aero Express in several Offshore Powerboat Association events, including one in New York, prior to August 2008. (Id.) Relatedly, Plaintiffs assert that Dejana spoke with Scism about re-outfitting the Aero Express to compete in a different class of New York races. (Id. 11.)

## DISCUSSION

Plaintiffs bear the burden of establishing personal jurisdiction. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 565 (2d Cir. 1996). The Court has "considerable procedural leeway" in resolving these motions; it may decide the motion on the basis of the parties' affidavits, "permit discovery in aid of the motion; or . . . conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). A plaintiff's precise burden depends on how the Court elects to address the jurisdiction issue. Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Short of a "full-blown evidentiary

5

hearing on the motion, the plaintiff need make only a prima facie showing through its own affidavits and supporting materials." Id. "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." Id.; see, e.g., Drake v. Lab. Corp. of Am. Holdings, No. 02-CV-1924, 2007 WL 776818, at *8 (E.D.N.Y. Mar. 13, 2007).

"A plaintiff can make this [prima facie] showing through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (internal quotations omitted)). When the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. Id.; DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001). Thus, the Court accepts Plaintiffs' evidence as true. See In re Ski Train Fire, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004) ("[A] court may consider materials outside the pleadings,

6

but must credit the plaintiff's averments of jurisdictional facts as true.").

I. Determining Personal Jurisdiction

Whether or not a defendant is subject to personal jurisdiction involves a two-part inquiry. First, the Court asks whether the defendant's acts bring him within reach of the long-arm statute of the state in which the Court sits. FED. R. CIV. P. 4(k)(1)(a); Asahi Metal Indus. v. Superior Court of C.A., Solano Cnty., 480 U.S. 102, 108-09, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987). Second, if the state's long-arm statute permits the Court's exercise of jurisdiction, then the Court determines whether such exercise would be consistent with the due process guarantees of the U.S. Constitution. See id.

II. New York's Long-Arm Statute

Plaintiffs argue that Defendants are subject to personal jurisdiction under two provisions of New York's long arm statute: N.Y. C.P.L.R. Subsections 302(a)(1) and 302(a)(3)(ii).

   A. N.Y. C.P.L.R. 302(a)(1)

Subsection 302(a)(1) provides in part that:

> Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

N.Y. C.P.L.R. 302(a)(1). To be subject to jurisdiction under this subsection, Defendants had to have transacted business in New York or contracted to supply goods and services in New York. Id.

Plaintiffs apparently assert that jurisdiction is proper under this provision because Supercat Rigging, a company partly owned by Scism, performed work on the boat and later billed Dejana in New York and because Defendants were instrumental in Dejana's decision to buy the Aero Express from Hefner. The Court agrees with Defendants that Plaintiff's allegations about Supercat Rigging, a non-party, are irrelevant to whether the Court has jurisdiction over Marine and Scism, particularly where there is no connection between Plaintiff's cause of action and the work Supercat Rigging performed on the Aero Express. See Johnson v. Ward, 4 N.Y.3d 516, 519, 797 N.Y.S.2d 33 (2005) (recognizing that a "substantial relationship must be established between a defendant's transactions in New York and a plaintiff's cause of action in order to satisfy" jurisdiction under Subsection 302(a)(1)). Plaintiff's allegations concerning Defendants' facilitating a sale between Hefner and Dejana might be relevant, but Plaintiffs have not supported these allegations with admissible evidence.

Plaintiffs rely on an affidavit from Hefner, who testified that Dejana told him that Scism and Gary Stray (an associate of Scism's) spoke with Dejana and was "instrumental in his decision to purchase it from me [Hefner]." (Hefner Affidavit ¶ 14.) This is hearsay and it cannot be used to defeat a motion to dismiss for lack of personal jurisdiction. Gosain v. State Bank of India, 689 F. Supp. 2d 571, 582 (S.D.N.Y. 2010) vacated in part on other grounds 414 Fed. Appx. 311 (2d Cir. 2011) ("While it is proper for a court to rely on affidavits to establish jurisdictional facts, hearsay evidence submitted by a plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction."); Shaoulian-Tehrani v. Khatami, No. 06-CV-6868, 2008 WL 1790386, at *2 (S.D.N.Y. Apr. 21, 2008); Ariel Maritime Grp., Inc. v. Pellerin Milnor Corp., No. 88-CV-6447, 1989 WL 31665, at *2 n.4 (S.D.N.Y. Mar. 29, 1989) ("[H]earsay evidence submitted by a plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction.").

Defendants maintain a website, but it is well-settled that websites "that only 'passively' provide[] information accessible to any person browsing the internet is insufficient" to subject the website's owner to personal jurisdiction. Zibiz Corp. v. FCN Tech. Solutions, 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011). In any event, there is nothing to suggest the required relationship between the website and Plaintiffs' causes of

9

action. See id. For example, there is no evidence that Dejana visited the site or relied on it in purchasing the Aero Express.

B. Subsection 302(a)(3)(ii)

Plaintiffs also argue that jurisdiction is proper under Subsection 302(a)(3)(ii), which provides in part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> . . .
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. 302(a)(3)(iii). Long-arm jurisdiction under this provision has five elements:

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

10

LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304 (2000); see also Penguin Grp., Inc v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010).

1. The First, Second, Third and Fifth Elements

For the limited purposes of this motion, the first, second, third and fifth elements are not seriously in dispute. Plaintiffs accuse Defendants of committing torts outside New York: strict products liability in connection with their manufacture and sale of a defective speed boat. Plaintiffs' causes of action arise from that conduct, and Defendants' conduct allegedly caused decedents' injuries in New York. Defendants virtually concede that they are engaged in interstate commerce, the fifth element. (Def. Rep. 4.)

2. The Fourth Element: Foreseeability

The issue, then, is whether Defendants should reasonably have expected a sale of a defective speed boat to have consequences in New York. This is an objective test. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999).[2]

---

[2] There is some disagreement whether courts should read in a "purposeful availment" element to the foreseeability element of Subsection 302(a)(3)(ii). Prior to 2000, at least, "New York courts . . . sought to avoid conflict with federal constitutional due process limits on state court jurisdiction by applying the 'reasonable expectation' requirement in a manner consistent with United States Supreme Court precedent." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999). "Thus, New York courts . . . asserted that the simple likelihood or foreseeability 'that a defendant's product will find its way

11

The Court agrees with Plaintiffs that Defendants ought to have foreseen their boats being used in New York because Defendants marketed power boats to customers who raced them on racing circuits whose events included races in Buffalo, New York and on Long Island. (Pl. Opp. 13-14.) Gary Stray, whose rigging company worked closely with Marine and Scism to outfit Marine's racing boats (Stray Aff. ¶ 5), testified that manufacturing racing boats was a significant part of Marine's business and that Marine sold boats for competition on American and international racing circuits (id. ¶ 9). These racing organizations hold events in New York, including the "Battle of the Bay" race in Patchogue, Long Island (Poplin Aff. ¶ 16), and an American Powerboat Association event in Buffalo, where Marine made its racing debut in 2000 (Stray Aff. ¶ 12).

Marine's website is also evidence that Defendants knew or should have known that their boats would be used in New York.

---

into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" Id. (quoting In re DES Cases, 789 F. Supp. 552, 570-71 (E.D.N.Y. 1992)). In 2000, New York's Court of Appeals decided LaMarca v. Pak-Mor Manufacturing Co., 95 N.Y.2d 210, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000), which made clear that purposeful availment is not a requirement of the long-arm statute but rather only a due process issue. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 n.3 (2d Cir. 2002). Whether or not LaMarca effectively overruled Kernan remains unresolved. See id.; see also Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 243 n.4 (S.D.N.Y. 2010).

It is replete with indications that Defendants intended their products to be used by power boat racers on racecourses worldwide. (See, e.g., Pl. Ex. 5, Summ. Defts.' Website ¶ 3.a ("The 55 Pleasure/Race series models feature . . . engineering advantages that have made us multi-time world and national champions on racecourses worldwide."), ¶ 3.b ("The success with the new design has earned the 44' an impressive list of championships and race wins."), ¶ 4.a ("Designed for the most extreme classes in offshore racing, the 48 Race Series is designed to take on the biggest, fastest, most demanding race courses and conditions found anywhere in the world.").) Defendants list their boats' successes on various powerboat racing circuits (id. ¶ 13), and they promote their involvement on circuits that list races in New York (id. ¶ 14.b, 14.e). The statements strongly suggest that Defendants foresaw that their boats would be used in New York. Accordingly, the Court concludes that jurisdiction over the Defendants is proper under Subsection 302(a)(3)(ii) of New York's long-arm statute.

III. Due Process

Having established that Defendants fall within the reach of New York's long-arm statute, the next issue is whether the Court's exercise of jurisdiction over Defendants comports with the U.S. Constitution's due process guarantees. LaMarca, 95 N.Y.2d at 216. These guarantees are satisfied when

13

defendants have certain minimum contacts with the forum such that maintenance of the suit would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotation marks omitted). The analysis involves two related inquiries: the "minimum contacts" inquiry and the "reasonableness" inquiry. See Kernan, 175 F.3d at 242-53. Here, Defendants do not satisfy the minimum contacts inquiry.

To show that Defendants have the requisite minimum contacts with the forum, Plaintiffs must show that Defendants purposely availed themselves of the privilege of doing business in New York and that they could foresee being haled into court here. Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1028 (2d Cir. 1997). In J. McIntyre Machinery, Ltd. v. Nicastro, the Supreme Court recently attempted to clarify what "minimum contacts" means in stream-of-commerce cases by explaining that, "as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." __ U.S. __, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765 (2011) (plurality opinion). Rather, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum . . . ." Id. (plurality opinion). For reasons already discussed, Defendants ought to

14

have predicted its boats would reach New York. The real question is whether they "targeted" New York within the meaning of the Supreme Court's minimum contacts jurisprudence. Although it is a close question, the Court thinks that Defendants have not.

Defendants sold specialized, expensive racing boats meant to be used on racing circuits that include events in New York. In this sense, they targeted customers whom they expected to bring their product into New York. But to say that this satisfies the purposeful availment requirement would be to conflate foreseeability and the minimum, affirmative contacts that the Supreme Court has held necessary for a defendant to be subject to a court's power. The plurality in McIntyre spoke to this point with an example:

> The owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country. If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town.

131 S. Ct. at 2790 (plurality opinion). Something more than foreseeability is required before the Court can exercise jurisdiction over Defendants; the must have "engage[d] in activities" in New York "that reveal an intent to invoke or benefit from the protection of its laws." Id. at 2791

(plurality opinion). As far as the Court can tell, Defendants have not taken any such steps; for example, they do not have representatives in New York, they have not delivered boats to New York, and they do not solicit sales in New York. The Court finds that Defendants do not have the requisite minimum contacts with New York, and thus they are not subject to the Court's jurisdiction.[3]

IV. <u>Transfer in the Interest of Justice</u>

The Court declines to permit jurisdictional discovery because the Plaintiffs did not specifically ask for it, see <u>Skrodzki v. Marcello</u>, No. 10-CV-5191, 2011 WL 3792418, at *19 (E.D.N.Y. Aug. 19, 2011), and, in any event, because the Court doubts that it would yield relevant evidence that was not already available to the parties. Instead, in the interest of

---

[3] Of course, a builder of high-end powerboats is a far cry from a local farmer, and the Supreme Court, recognizing that the "economic realities of the market the defendant seeks to serve will differ across cases," left "judicial exposition" to "clarify the contours" of its decision in <u>McIntyre</u>. 131 S. Ct. at 2790 (plurality opinion). This Court can envision an argument that by selling an expensive luxury item to a relatively small pool of potential customers (wealthy boating enthusiasts) with the knowledge that the customers will use the product in a handful of states that host powerboat races, the seller is "targeting" customers in those states in a manner that satisfies the minimum contacts requirement. In the Court's view, however, this argument does not justify a departure from <u>McIntyre</u>'s core reasoning, which emphasized the need for defendants to engage in activities within the forum. <u>Id.</u> at 2789 ("[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.") (plurality opinion).

justice pursuant to 28 U.S.C. § 1406(a), the Court will transfer this action to the United States District Court for the Eastern District of Missouri, the venue where Marine is headquartered. The statute of limitations has likely run on Plaintiffs' claims, and this is a "compelling reason" for a transfer. See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005).

CONCLUSION

For the foregoing reasons, the Court concludes that it does not have personal jurisdiction over Defendants. The Clerk of the Court is directed to terminate Docket Entry 17 and to transfer this action to the United States District Court for the Eastern District of Missouri. See 28 U.S.C. § 1406(a).


SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


DATED: September  26 , 2011
Central Islip, New York